# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| AUTAUGA COUNTY EMERGENCY MANAGEMENT COMMUNICATION DISTRICT, et al., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 2:15-cv-00765-SGC |
| BELLSOUTH TELECOMMUNICATIONS, LLC, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Autauga County Emergency Management Communication District, *et al.* (collectively, "Defendants" or the "Districts"), initiated this matter by filing a complaint in the Circuit Court of Jefferson County on March 31, 2015. (Doc. 1-1 at 5-17).  Defendant, BellSouth Telecommunications, LLC, removed to this court on May 6, 2015, on the basis of federal diversity jurisdiction.  (Doc. 1).[1] After removal, Plaintiffs filed an Amended Complaint.  (Doc. 19).  Presently pending is Defendant's motion to dismiss, pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*.  (Doc. 20).  The motion is fully briefed and ripe for

---

[1] Plaintiffs are political and legal subdivisions of the State of Alabama; Defendant is an LLC, the sole member of which is a Georgia Corporation.  (*See* Doc. 1 at 3; Doc. 19 at 3-4).  Plaintiffs seek damages in excess of the $75,000 jurisdictional threshold.  (*See* Doc. 1 at 4; Doc. 19 at 4-5).

adjudication.  (Docs. 21, 23-24).  Also pending is Plaintiffs' motion for leave to file additional authority, which is **GRANTED**.  (Doc. 25).   For the reasons that follow, Defendant's motion to dismiss will be denied.

## I.     FACTS AND RELEVANT BACKGROUND

The Alabama Emergency Telephone Services Act ("ETSA") created emergency communications districts within Alabama to establish "911" local emergency telephone service.  ALA. CODE § 11-98-1, *et seq.*; (*see* Doc. 21-1 at 3-53).  Pursuant to the prior version of the ETSA, which was in effect until October 1, 2013,[2] a district's board of commissioners could impose an emergency telephone service charge to be collected by service suppliers such as BellSouth.  ALA. CODE. §§ 11-98-5(a)(1), 11-98-5(c); (*see* Doc. 21-1 at 14-15).   The statute required service suppliers to submit the service charges to the districts on a monthly basis. ALA. CODE. § 11-98-5(e); (*see* Doc. 21-1 at 15).  The ETSA also allowed districts to audit the service suppliers' billing, collection, and remittance of 911 charges annually.  *Id*.  However, the service suppliers were under no obligation to take legal action against a customer who refused to pay the 911 charge.  *Id.*; § 11-98-5(d); (*see* Doc. 21-1 at 14-15).   The 911 charges to be collected by service suppliers applied to all wired telephone services within each district, including so-

---

[2] Unless otherwise noted, all references to the ETSA are to the prior version of the statute in effect until October 1, 2013.  A copy of the pre-October 1, 2013 version of the statute is attached to the motion to dismiss.  (Doc. 21-1 at 3-53).

called Voice-over Internet Protocol service ("VoIP")[3] and other similar technology. ALA. CODE. § 11-98-5.1(c); (*see* Doc. 21-1 at 18). The ETSA required service suppliers such as BellSouth to collect the emergency communication fee from each non-exempt customer with a ten-digit access number and remit the fees to the districts. *Id.* The ETSA also included a statutory cap of one hundred 911 charges "per person, per location." ALA. CODE § 11-98-5(c); (*see* Doc. 21-1 at 14).

The Amended Complaint alleges Defendant provided telephone service to customers within the districts comprised by Plaintiffs; much of this service constituted VoIP service and similar technology. (Doc. 19 at 5-7). Each Plaintiff assessed 911 charges on all telephone service within its geographical territory and relied on these charges to fund facilities continually staffed by personnel trained to receive emergency calls and transfer them to the appropriate authorities. (Doc. 19 at 5).

Plaintiffs contend "Defendant failed to bill, collect, and remit 911 Charges in accordance with the law." (Doc. 19 at 6). Specifically, the Amended Complaint alleges Defendant did not bill, collect, and remit 911 charges for every non-exempt ten-digit access number assigned to VoIP users. (*Id.*). While not providing a

---

[3] Interconnected VoIP Service, as defined by the *Code of Federal Regulations*, is a service that "(1) Enables real-time, two-way voice communications; (2) Requires a broadband connection from the user's location; (3) Requires Internet protocol-compatible customer premises equipment (CPE); and (4) Permits users generally to receive calls that originate on the public switched telephone network and to terminate calls to the public switched telephone network." 47 C.F.R. § 9.3 (2009).

precise number, the Amended Complaint alleges Defendant did not properly bill, collect, and remit 911 charges associated with "thousands" of VoIP numbers. (Doc. 19 at 8).  Plaintiffs also allege Defendant incorrectly applied the statutory cap on 911 charges; while the ETSA capped 911 charges at one hundred per person, per location, Defendant capped 911 charges at one hundred per customer, even when that customer had multiple locations.  (Doc. 19 at 8).  The Amended Complaint also contends Defendant submitted remittance forms to the Districts stating there were no exempt customers or lines, despite the fact that Defendant did not assess 911 charges to all non-exempt lines.  (Doc. 19 at 8).  Plaintiffs allege Defendant's actions caused financial damage.  (Doc. 19 at 9).  The Amended Complaint also contends Defendant's practices allowed it to offer services at lower costs and, thus, gain a competitive advantage.  (Doc. 19 at 9).

On these facts, the Amended Complaint states five claims against Defendant: (1) a statutory claim under the ETSA; (2) a claim styled as "Negligence/Negligence Per Se/Gross Negligence/Recklessness"; (3) breach of fiduciary duty; (4) wantonness; and (5) a claim for "Negligent Misrepresentation/Fraud."  (Doc. 19 at 9-15).  Defendant contends all of Plaintiffs' claims are due to be dismissed.

## II.     STANDARD OF REVIEW

Under Rule 8 of the *Federal Rules of Civil Procedure*, a plaintiff must plead "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought." FED. R. CIV. P. 8(a)(2), (3).  Rule 8 is satisfied where the complaint gives "the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *American Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1288 (11th Cir. 2010).  As explained by the Supreme Court, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but must include more than "labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A plaintiff alleging fraud is held to a higher pleading standard.  *See* FED. R. CIV. P 9(b).  Specifically, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." *Id.*  To properly state a claim for fraud, Rule 9(b) requires a complaint to state:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of

such statements and the manner in which they misled the plaintiff, and
(4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting

*Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th

Cir. 1997) (internal quotation omitted)).   However, "Rule 9(b) does not abrogate

the concept of notice pleading."   *FindWhat Investor Group v. FindWhat.com*, 658

F.3d 1282, 1296 (11th Cir. 2011).

## III.   DISCUSSION

Defendant's motion to dismiss asserts a number of grounds.   First, Defendant

contends the Amended Complaint fails to state a claim under Rule 8 of the *Federal*

*Rules of Civil Procedure* and the standard set forth in *Twombly* and *Iqbal*.   (Doc.

21 at 10-14).   Next, Defendant argues the ETSA provides Plaintiff's sole remedy,

and accordingly, the common-law claims are due to be dismissed as duplicative.

(*Id.* at 14-15).   Specifically, as to the claim for "Negligence/Negligence Per

Se/Gross Negligence/ Recklessness," Defendant also argues: (1) the claim is barred

in its entirety under the economic loss rule; and (2) any claim for negligence *per se*

is barred because Plaintiffs do not belong to a class of persons the ETSA was

designed to protect.   (*Id.* at 15-16).   As to the claim for breach of fiduciary duty,

Defendant contends its relationship with Plaintiffs is not fiduciary in nature.   (*Id.* at

16-18).   Regarding wantonness, Defendant contends the claim is inadequately pled

and is barred under the economic loss rule.   (*Id.* at 18-19).   Finally, the motion to

dismiss asserts the Fraud claim is not pled with particularity under Rule 9(b).  (*Id.* at 19-20).  Defendant's arguments are addressed in turn, although not in the order presented.

### A.    Count I: Violation of the ETSA

The only argument in the motion to dismiss applicable to Plaintiff's claim under the ETSA is that the Amended Complaint is insufficiently pled.  (Doc. 21 at 10-14).   To this end, Defendant asserts Plaintiffs have not included factual allegations to give plausible support for the claim that it underbilled 911 charges. (Doc. 21 at 10-13).  Defendant contends the Amended Complaint contains only conclusory allegations, which do not provide notice of the claim asserted.  (*Id.*). Defendant appears to take issue with Plaintiffs' failure to plead: (1) the amount of 911 charges Defendant billed or remitted each month; (2) the amount of 911 charges Plaintiffs contend Defendant should have billed or remitted each month; (3) the identities of customers Defendant incorrectly billed or to whom the statutory cap was misapplied; and (4) the identities of exempt customers Defendant should have identified on the remittance forms.  (*E.g.*, Doc. 21 at 11).

The Amended Complaint alleges Plaintiffs are districts and BellSouth is a service supplier to Plaintiffs under the ETSA.  Plaintiffs allege BellSouth violated the ETSA prior to October 1, 2013, by: (1) failing to bill, collect, and remit 911 charges for thousands of non-exempt ten-digit access number assigned to users of

7

VoIP and similar technology; (2) incorrectly applying the ETSA's statutory cap on 911 charges; and (3) submitting remittance forms indicating there were no exempt customers or lines within the districts when, in fact, there were.  Taken as true, these allegations are sufficient to place Defendant on notice of the nature of Plaintiffs' claim under the ETSA and the grounds upon which it rests.  *See American Dental Ass'n*, 605 F.3d at 1288.  Accordingly, more specific allegations are not required under Rule 8.[4]

To the extent the motion to dismiss is premised on the Amended Complaint's lack of detail concerning the amount of 911 charges Defendant billed and remitted—or should have—and the identities of customers, "detailed factual allegations" are not required to survive a motion to dismiss under Rule 12(b)(6). *Twombly*, 550 U.S. at 555.  Therefore, the motion to dismiss is due to be denied as to the claim under the ETSA.

### B.  Duplicative Common Law Claims

The Alabama Supreme Court has held:

> It is a fixed principle of the common law, that if a right exists, an appropriate remedy for its enforcement necessarily follows as an incident.  This is true, however, only of common-law rights; and of these it is equally true, as a general proposition, if there is not an adequate remedy at law, a court of equity will intervene to correct the

---

[4] The briefing on the motion to dismiss includes arguments regarding whether Plaintiffs were precluded from pleading with more specificity by non-disclosure agreements between the parties, as well as provisions of the ETSA regarding disclosure of trade secrets.  (*See* Docs. 23 at 6-8, 24 at 3-4).  Because the Amended Complaint states a claim under the ETSA, discussion of these contentions is unnecessary.

deficiency, and grant appropriate relief.  But, *if a statute* creates a new right, and *provides a specific remedy*, that remedy is exclusive.

*Janney v. Buell*, 55 Ala. 408, 410 (Ala. 1876) (emphasis added).  Additionally, in 2015, the Alabama Supreme Court affirmatively answered the following certified question:  "Does the [ETSA] authorize a right of action by local 911 districts seeking damages from telephone providers for allegedly failing to bill 911 charges?"  *Century Tel of Ala., LLC v. Dothan/Houston Cty. Commc'ns Dist.*, --- So. 3d ---, No. 1131313, 2015 WL 5725111, at *6–7 (Ala. Sept. 30, 2015), *reh'g denied* (Dec. 11, 2015).  As Defendant would have it, the Alabama Supreme Court's recognition of the Districts' right of action under the ETSA means that Plaintiffs' sole remedy lies in the ETSA and, further, renders Plaintiffs' common law claims duplicative of the statutory claim.  Defendant relies on *Johnson v. Brunswick Riverview Club, Inc.*, 39 So. 3d 132, 139-40 (Ala. 2009), which held a plaintiff alleging a claim under Alabama's Dram Shop Act could not allege common law negligence claims on the same facts.  (Doc. 21 at 15).

Although not argued by Plaintiffs, Defendant has not shown, and the undersigned cannot discern, a "specific remedy" provided in the ETSA.  Indeed, the only reference to legal remedies the undersigned has found in the former version of the ETSA is a provision providing the districts "shall be political and legal subdivisions of the state, with power to sue and be sued in their corporate

names."  ALA. CODE § 11-98-2.  (*See* Doc. 21-1 at 5).[5]  This stands in stark contrast to the Dram Shop Act, which provides:

> Every wife, child, parent, or other person who shall be injured in person, property, or means of support by any intoxicated person . . . shall have a right of action against any person who shall . . . cause the intoxication of such person *for all damages actually sustained, as well as exemplary damages*.

ALA. CODE § 6-5-71 (emphasis added).

The ETSA does not include any description of the types of claims or damages available to the districts.  This distinction, together with the fact that two courts sitting in this district have allowed common law claims to proceed alongside a statutory claim under the ETSA, persuades the undersigned that Plaintiffs' common law claims are not due to be dismissed as duplicative of their statutory claim.  *See Madison Cty. Commc'ns Dist. v. BellSouth Telecomms., Inc.*, No. 06-1786-CLS, 2009 WL 9087783 (N.D. Ala. Mar. 31, 2009) (denying motion for summary judgment on common law claims for breach of fiduciary duty, negligence, and wantonness, as well as a claim for declaratory judgment under the ETSA); *see also Madison Cty. Commc'ns Dist. v. MagicJack Vocaltec, Ltd., et al*, No. 12-1922 (N.D. Ala. October 23, 2012) (Doc. 24) (denying motion to dismiss concerning both a statutory claim under the ETSA and common law claims for negligence *per se*, breach of fiduciary duty, and wantonness).   Accordingly,

---

[5] The current version of the ETSA provides that the districts have the authority "[t]o sue and be sued, to prosecute, and defend civil actions in any court having jurisdiction of the subject matter and of the parties."  ALA. CODE § 11-98-4(f)(1).

Defendant's motion is due to be denied to the extent it seeks dismissal of Plaintiffs' common law claims as duplicative of their statutory claim under the ETSA.

### C. Economic Loss Rule

Defendant contends Plaintiffs' claims on theories of negligence and wantonness are due to be dismissed because the Amended Complaint alleges only economic damages. In support of this argument, Defendant's principal brief cites a single case from the Middle District of Alabama for the proposition that a "plaintiff can only sue in tort when a defendant breaches the duty of reasonable care . . . [and] such a breach causes personal injury or property damage." (Doc. 21 at 15-16) (quoting *Blake v. Bank of Am., N.A.,* 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2012)).

In response, Plaintiffs contend the Alabama Supreme Court has limited the economic loss rule to product liability cases and noted the rule has not been applied to dismiss tort claims alleging purely economic losses in other contexts. (Doc. 23 at 13-14) (citing *Lloyd Wood Coal Co. v. Clark Equip. Co*, 543 So. 2d 671 (Ala. 1989); *Pub. Bldg. Auth. v. St. Paul Fire and Marine Ins. Co.*, 80 So. 3d 171, 184 (Ala. 2010)). Plaintiffs also rightly note that the holding in *Blake* arose in the context of a contractual relationship—a mortgage—and that the true thrust of the holding is that "Alabama does not recognize a tort-like cause of action for the breach of a duty created by contract." (Doc. 23 at 13) (quoting *Blake*, 845 F. Supp.

11

2d at 1210).  Plaintiffs' reading of *Blake* appears to be correct; the sentence quoted in Defendant's principal brief cites *Vines v. Crescent Transit Co.*, which held that "a negligent failure to perform a contract . . .  is but a breach of the contract."  85 So. 2d 425, 440 (Ala. 1956).  Because there was no contractual relationship between the parties here, Plaintiffs contend the economic loss rule is inapplicable.

In reply to this argument, Defendant cites *Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236 (N.D. Ala. 2013), for the proposition that a judge in this district has applied the economic loss rule in a non-contractual setting.  (Doc. 24 at 7). However, the plaintiffs in *Prickett* asserted claims for negligent and wanton mortgage servicing.  Addressing this fact, the court noted, "[a]s in *Blake*, the duties and breaches alleged by Plaintiffs clearly would not exist but for the contractual relationship between the parties."  *Prickett*, 946 F. Supp. 2d at 1244.   In response to the plaintiffs' argument that they did not have a contract with the loan servicer, the court in *Blake* went on to state:

> Even if Plaintiffs are correct [that no contract existed], the Court's conclusion is nonetheless the same.  The court in *Blake* addressed this potential issue, noting that a borrower still cannot allege a tort claim for a mortgage servicer's negligent conduct because an agent to an agreement can "only incur tort liability . . .  by causing *personal injury or property damages*."

*Prickett*, 946 F. Supp. 2d 1236, 1244 (quoting *Blake*, 845 F. Supp. 2d at 1210) (emphasis in original).   Accordingly, while Defendant cites *Prickett*, as a categorical holding that economic injury alone does not give rise to tort liability,

that case arose in the context of a mortgagor-mortgagee relationship.  The Alabama Supreme Court has cited this line of federal cases but, again, only in the context of claims for negligent or wanton mortgage servicing.  *U.S. Bank Nat. Ass'n v. Shepherd*, --- So. 3d. ---, No. 1140376, 2015 WL 7356384, at *12 (Ala. Nov. 20, 2015) ("we note that the relationship between the [parties] is based upon the mortgage and is therefore a *contractual* one") (emphasis in original).

Accordingly, because it appears Alabama courts do not apply the economic loss rule in the circumstances presented in the instant case, Defendant's motion is due to be denied to the extent it relies on that rule to seek dismissal of the negligence and wantonness claims.

### D.    Count II: Negligence

In addition to the grounds already addressed, Defendant contends: (1) the Amended Complaint does not state a claim for negligence; and (2) the claim for negligence *per se* is due to be denied because Plaintiffs are not within the class of persons the statute was designed to protect.  (Doc. 21 at 15-16).   Instead, Defendant contends the ETSA was designed to protect the public as a whole by providing a means of communication during emergency circumstances.  Defendant further argues the statute does not define a standard of care, and therefore, negligence *per se* is not implicated.  (Doc. 21 at 16).  The foregoing arguments are persuasively resolved by two cases adjudicated in this district.

First, to the extent Defendant argues Plaintiffs have failed to state a negligence claim under Rule 8, the court in *BellSouth,* on a motion for summary judgment, found:

> This court finds that [Plaintiff] has proven each of the elements of its negligence claims. First, BellSouth was subject to a statutory duty to collect the E911 charge and remit it to [Plaintiff]. Second, it is undisputed that BellSouth has breached that duty by failing to collect an E911 charge for each voice pathway capable of local exchange service. Third, [Plaintiff] has suffered financial losses due to BellSouth's failure to collect and remit the E911 charge in accordance with the Act. Fourth, [Plaintiff]'s financial loss is the proximate result of BellSouth's breach of its statutory duty.

*BellSouth*, 2009 WL 9087783, at *13.

Here, the Amended Complaint alleges the following facts in support of Plaintiffs' negligence claim: 1) Defendant had a duty to bill, collect, and remit 911 charges; 2) Defendant breached those duties; 3) Defendant's breach proximately caused injury to the Districts, specifically in the form of financial loss of resources; and 4) the injuries were the same as the ones the ETSA was intended to prevent. Accordingly, accepting the Amended Complaint's factual allegations as true, Plaintiffs have stated a claim for negligence.

Next, to the extent Defendant contends the negligence *per se* claim is due to be dismissed, the court in *MagicJack*, on a motion to dismiss, found:

> Defendants next contend that the plaintiff's claims for negligence *per se*, breach of fiduciary duty, and wantonness should be dismissed. Defendants are correct in stating that negligence *per se* "requires that the statute have been enacted to protect a class of

14

persons," as opposed to the general public. *See Parker Bldg. Servs. Co., v. Lightsey*, 925 So. 2d 927, 931 (Ala. 2005). Plaintiff asserts a negligence *per se* claim against the defendants for the violation of Ala. Code §§ 11-98-5 and 11-98-5.1(c). These statutes assess a charge on lines that allow for VoIP telephone service and that charge funds emergency communication districts such as plaintiff. *See* Ala. Code §§ 11-98-5 & 11-98-5.1(c). While the overall purpose of the ETSA is the establishment of 911 service for the benefit of the general public, the sections at issue are meant to fund emergency communications districts, like plaintiff. The failure to remit the applicable service charge, therefore, directly results in harm to the plaintiff and the court declines to dismiss plaintiff's negligence *per se* claim.

*MagicJack*, No. 12-1922, Doc. 24 at 8-9.

The arguments presented in *MagicJack* regarding negligence *per se* are the same arguments presented in Defendant's motion to dismiss in the instant case. (*See* Doc. 21 at 16). The undersigned finds the reasoning in *MagicJack* to be persuasive on this point. Accepting the factual allegations in the Amended Complaint as true, Plaintiffs have stated a claim for negligence *per se*. Accordingly, for all of the foregoing reasons, Defendant's motion to dismiss is due to be denied as to the negligence claim.

### E. Count III: Breach of Fiduciary Duty

Count III of the Complaint alleges breach of fiduciary duty against Defendant. (Doc. 19 at 11-13). Defendant contends there is no fiduciary relationship between itself and the Districts. (Doc. 21 at 16-17). Alabama law defines a fiduciary relationship as existing where:

one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another.

*Power Equipment Co., Inc. v. First Alabama Bank,* 585 So. 2d 1291, 1297-98 (Ala. 1991) (quoting *Bank of Red Bay v. King*, 482 So. 2d 274 (Ala. 1985)).

In *BellSouth*, the court found at summary judgment that the plaintiff established a fiduciary relationship with Bellsouth where it demonstrated: (1) it had placed its trust and confidence in BellSouth to accurately assess the 911 charges each month: (2) BellSouth submitted monthly statements to the plaintiff stating it had billed and collected the charges in accordance with the ETSA; and (3) the plaintiff was forced to trust that BellSouth's statements reflecting its collections and remittances were correct. *BellSouth*, 2009 WL 9087783, at *13. While BellSouth contended there was no fiduciary relationship because it had no superior knowledge over the plaintiff, the court noted that superior knowledge is only one factor in finding a fiduciary relationship. *Id.* Under these circumstances, the court

found the plaintiff "established that BellSouth breached its fiduciary duty to [Plaintiff] to collect and remit the E911 charge in accordance with the Act." *Id.*

Here, the Amended Complaint alleges §§ 11-98-1 and 11-98-5.1 created a special and confidential relationship with Defendant. (Doc. 19 at 11). Specifically, Plaintiffs allege they relied on Defendant to act in good faith due to their inability to calculate the number of access numbers provided to customers of VoIP and that they were, therefore, unable to calculate the amount of charges Defendant should have paid. (*Id.* at 12). The Amended Complaint alleges Defendant was in a dominant position over the Districts because Defendant "determined the amount of 911 Charges received by the Districts, and as those 911 Charges were the principal source of operating capital funds, the Defendant effectively exercised a level of control over the Districts." (*Id.*). Plaintiffs also allege they relied on Defendant "to act in good faith and with honesty because the Districts are not aware of and had no way of calculating the number of ten-digit access numbers provided to customers of VoIP or similar service," and that Defendant had "sole and exclusive control of that information." (Doc. 19 at 12). While Defendant cites Plaintiff's statutory right to audit the 911 charges, this is similar to the circumstances presented in *Bellsouth,* in which the defendant argued its knowledge was not superior to that of the plaintiffs. There, the court found the lack of superior knowledge was but one factor to be considered, and its absence did

not preclude the existence of a fiduciary relationship.  *See BellSouth*, 2009 WL 9087783, at *13.

Accepting the factual allegations in the Amended Complaint as true, Plaintiffs have sufficiently pled the existence of a fiduciary relationship. Accordingly, Defendant's motion to dismiss the claim for breach of fiduciary duty is due to be denied.

### F.    <u>Count IV: Wantonness</u>

In addition to the arguments already addressed, Defendant contends the Amended Complaint fails to state a claim for wantonness.  (Doc. 21 at 18-19).  A plaintiff asserting wantonness under Alabama law must show the defendant "with reckless indifference to the consequences, consciously and intentionally . . . omitted some known duty with *knowledge* of the existing conditions and that this act or omission would likely or probably lead to the plaintiff's injury."  *Richards v. Michelin Tire Corp.*, 21 F.3d 1048, 1057 (11th Cir. 1994) (emphasis in original) (citing *Joseph v. Stuggs*, 519 So. 2d 952, 954 (Ala. 1988)).

Here, the Amended Complaint alleges Defendant purposefully failed to collect and remit 911 Charges due under the ETSA, "with a reckless disregard for the wellbeing of the Districts with knowledge that the underpayment of 911 Charges would likely cause injury or damage."  (Doc. 19 at 13).  Plaintiffs further allege Defendant did so to gain a competitive advantage and that its failure to

comply with the ETSA caused the Plaintiffs to lose operating and capital funds in addition to impairing their ability to provide 911 services.   (*Id.*).   In similar circumstances, the court in *MagicJack* found these allegations sufficient to state a claim for wantonness. *MagicJack*, No. 12 -1922, Doc. 24 at 9-10.

Accepting the factual allegations in the Amended Complaint as true, Plaintiffs have stated a claim for wantonness.  Accordingly, Defendant's motion to dismiss is due to be denied as to the wantonness claim.

### G.   Count V: Negligent Misrepresentation/Fraud

Under Alabama law, the elements of a claim for fraudulent misrepresentation are: "(1) a false representation (2) concerning a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result." *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455, 463 (Ala. 2000).  As previously noted, under the confines of Rule 9(b), a claim for fraudulent misrepresentation must allege:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba*, 256 F.3d at 1202.  Simply put, "Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." *Erb v. Advantage*

*Sales & Marketing LLC*, No. 11-2629-SLV, 2012 WL 3260446, at *3 (N.D. Ala. Aug. 3, 2012) (internal quotation omitted).

Here, regarding the elements of fraud, the Amended Complaint alleges Defendant under-reported the number of lines subject to 911 charges and the number of exempt customers within each district.  (Doc. 19 at 14).  The complaint further notes that, each time BellSouth made these statements, it certified that the information was "true, complete and accurate."  (*Id.*).  The Amended Complaint alleges these misstated facts were material because Plaintiffs relied upon the 911 charges to fund their operations.  (*Id.* at 15).  Plaintiffs contend these misstatements caused financial harm by decreasing the amount of operating funds and impaired their ability to provide 911 services.  (*Id.*).

As to the requirements of Rule 9(b), the Amended Complaint states Defendant made the alleged misstatements in its monthly remittance forms prior to October 1, 2013.  Plaintiffs assert these underreporting of lines subject to 911 charges and the total amount of charges due misled the Plaintiffs and caused them to accept less than all of the 911 charges to which they were entitled.  The Amended Complaint alleges Defendant purposefully underreported the amount of 911 charges due in order to decrease their operating cost and, thereby, to gain a competitive advantage.   While not overly generous with factual detail, these allegations state a claim for fraud with the particularity required by Rule 9(b).

Accordingly, Defendant's motion to dismiss will be denied as to Plaintiffs' fraud claim.

## IV. CONCLUSION

For all of the foregoing reasons, accepting the factual allegations in the Amended Complaint as true, Plaintiffs have stated plausible claims placing Defendant on notice of the claims asserted and the conduct about which they complain.  Accordingly, Defendant's motion to dismiss Plaintiffs' First Amended Complaint (Doc. 20) is **DENIED**.

**DONE** this 6th day of October, 2016.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE